```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 CASSANDRA T. THOMPSON,

                       Plaintiff,           MEMORANDUM & ORDER
                                            22-CV-4732 (EK)(SDE)
           -against-

 DOUGLAS A. COLLINS, SECRETARY OF
 VETERANS AFFAIRS; CHRISTINE CARBALLO;
 and MICHAEL INGINO,

                       Defendants.

-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

Plaintiff Cassandra Thompson brings various civil rights claims against her supervisors at the U.S. Department of Veterans Affairs (the "VA").[1] Proceeding *pro se* here, she claims that her employer discriminated against her based on her race, color, sex, gender, disability, and veteran status; retaliated against her for one of her EEOC complaints; and created a hostile work environment.

The government now moves to dismiss. For the reasons that follow, that motion is granted.

---

[1] The Clerk of Court is respectfully requested to substitute Douglas A. Collins, the current Secretary of Veterans Affairs, as a party in his official capacity, pursuant to Federal Rule of Civil Procedure 25(d), and to update the caption accordingly.
    The defendants are Secretary Collins; Christine Carballo, the Veterans Affairs Department's Chief of Material Management; and Michael Ingino, an Associate Director in the department.

## I.  Background

**A. Factual Background**

We take the following facts from Thompson's complaint and opposition papers and assume them to be true for the purposes of the instant motion.[2]  Thompson was a "Program Support Assistant" at the VA's Logistics Services operation in New York.  The pleadings do not explain her job duties.  As far as the complaint indicates, she remained in the position when she filed this case.

Thompson's factual recitation is short and highly general.  She complains of a "fabricated" "report of contact" that defendant Carballo filed against her in March 2018, but provides no information about the underlying events.  Compl. Supp. 5, ECF No. 1-1.  The report recommended that she lose overtime pay and be suspended from any involvement in the "inspection" of "[w]eapons inventory."  Pl. Opp'n 4-5, ECF No. 33.  Around this time, Carballo also "display[ed] favoritism toward[] [Thompson's] white male counterparts and continued to

---

[2] Thompson's brief alleges several facts that she did not include in the complaint, notwithstanding that she was offered multiple opportunities to amend and declined.  In an effort to frame the dispute, and given that the disposition is against her, we will "take account of all the facts contained in both [Thompson's] complaint and h[er] opposition papers."  *Small v. Ortlieb*, No. 10-CV-1616, 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in [her] papers opposing the motion.").  We also note certain facts taken from the 2022 EEOC Decision attached to the complaint.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (on a motion to dismiss, "we may consider any written instrument attached to the complaint").

undermin[e] [Thompson's] character and work ethic[]." Compl. Supp. 5.

Later — after Thompson complained to the EEOC — she was "transfer[red] to [a] less prestigious" campus. Pl. Opp'n 2. She had been working at the VA's Brooklyn campus since 2010 "as an agreed upon accommodation"; in 2018, however, the agency involuntarily reassigned her — "without following proper protocol" — to work in Manhattan. *Id.* at 2, 5. The complaint is not entirely clear on how her job duties changed as a result of this reassignment: she alleges that she was "removed" from "duties at all campus[es]," *see id.* at 3, 5, but also says she was told to "continue to do what [she] was doing before" at the Manhattan campus. *Id.* at 5. Around the time her first complaint was dismissed by the EEOC, Ingino called her a "cancer to the service." *Id.* at 6.

Thompson also levels allegations of unequal pay. She performed duties that would typically be associated with a higher pay grade, but her supervisor "refused to give [her] the pay grade and title" higher than the GS-8 status she held. *Id.* at 5. She "outperformed [her] white male coworkers (who were GS9, 11, 12)." *Id.* She "applied on several occasions for the Property Manager (NX) position and continued to be non-selected where the job was canceled each time [she] applied, and 2 males were hired who were not more qualified." *Id.* at 6.

3

**B.   Procedural Background**

Between 2016 and 2022, Thompson filed six complaints with the Equal Employment Opportunity Commission.  Her first claim alleged race, gender, and disability discrimination; this did not lead to the issuance of a right-to-sue letter.  *See* Frassinelli Decl. ¶¶ 12-15, ECF No. 27-2; 2016 EEOC Compl. 2, ECF No. 32.

After filing an EEOC claim in 2018, however, she obtained a decision authorizing suit.  This claim alleged sex discrimination and retaliation — but not discrimination on the basis of race, disability, or veteran status.  This claim was predicated on Carballo's report, the transfer of location, and her being "charged . . . Absent Without Leave (AWOL)" at the new location.  Decision on Req. for Recons. ("EEOC Decision") 2, ECF No. 1-2.  This suit was timely filed thereafter.[3]

Thompson's complaint can be liberally construed to assert federal claims under Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Rehabilitation Act, the Equal Pay Act, Section 1981, and the Family and Medical Leave Act.  She has also brought analogous state and local antidiscrimination claims and common law claims for defamation

---

[3] Her third and fourth complaints are currently being investigated; the fifth has reached a final administrative decision that Thompson did not appeal; and the sixth is pending acceptance.  Defs.' Mot. to Dismiss 6-8, ECF No. 27-1.

4

and intentional infliction of emotional distress. *See* Compl. 3, ECF No. 1. As discussed further below, the complaint does not state which facts support which claims. She requests injunctive and monetary relief. *Id.* at 6.

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[4] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

*Pro se* complaints are "held to less stringent standards" than pleadings drafted by attorneys, and the Court will read a *pro se* complaint liberally and interpret it as raising the strongest claims it suggests. *Erickson v. Pardus*,

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

551 U.S. 89, 94 (2007).  Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law."  *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  Thus, a *pro se* complaint must still plead sufficient facts to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

### III.  Discussion

**A.  Administrative Exhaustion**

Before the EEOC, Thompson complained of sex discrimination and retaliation (as reflected in the right-to-sue letter she received in January 2022).  *See* EEOC Decision 1-2.  She did not allege discrimination on the basis of race, disability, or veteran status.  (Nor does she allege facts sufficient to support such claims in the complaint.)  Based on her failure to exhaust, she may not pursue those claims here.

A plaintiff bringing a claim under Title VII, the ADA, and the Rehabilitation Act must exhaust administrative remedies through the EEOC.  42 U.S.C. § 2000e-5(e)(1); *Soules v. Connecticut*, 882 F.3d 52, 57 (2d Cir. 2018) (Title VII, ADA); *Boos v. Runyon*, 201 F.3d 178, 181 (2d Cir. 2000) (Rehabilitation Act).  Dismissal is appropriate when a plaintiff fails to exhaust.  42 U.S.C. § 2000e-5(f); *Boyar v. Yellen*, No. 21-507, 2022 WL 120356, at *2 (2d Cir. Jan. 13, 2022).  This requirement

6

is not jurisdictional, but is a mandatory claims-processing rule.  *Fort Bend County v. Davis*, 587 U.S. 541, 550-51 (2019).

The plaintiff does not have to allege the *precise* facts on which a suit is based before the EEOC.  Instead, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency."  *Soules*, 882 F.3d at 57.  This is the case when "(1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Id.*

Thompson's new allegations of race, disability, and veteran-status discrimination do not meet this standard.  A claim is not "reasonably related" when it is based on "a wholly different type of discrimination" than the one alleged before the EEOC.  *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998).  So a disability claim, for example, cannot be brought in federal court alongside a Title VII claim when the plaintiff's "EEOC charge did not mention any disability or health issue."  *Kirkland-Hudson v. Mt. Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 440 (S.D.N.Y. 2023); *see also Espinoza v. Port Auth. of N.Y. & N.J.*, No. 19-CV-258, 2022 WL

7

623809, at *6 (S.D.N.Y. Mar. 2, 2022) ("[C]ourts in this Circuit have typically found that Title VII claims are not reasonably related to ADA claims.").

Accordingly, we proceed to consider Thompson's claims of gender discrimination and retaliation.

**B.  Title VII Discrimination Claim**

    1.  Discrimination

To plead a Title VII claim for gender discrimination, a plaintiff must allege facts to support "(1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Thompson's claim falters on the third and fourth requirements.

***Adverse Action.***  Thompson's claims about her supervisors' insults, the false disciplinary report, and her designation as AWOL do not qualify as adverse employment actions.  But two alleged actions do: the failure to promote her and the lateral transfer.

"To make out a Title VII discrimination claim, a [plaintiff] must show some harm respecting an identifiable term or condition of employment."  *Muldrow v. City of St. Louis*, 601

8

U.S. 346, 354-55 (2024).  Thompson states that her supervisors insulted her — for example, when Ingino called her "a cancer to the service."  Pl. Opp'n 6.  These statements did not, as alleged, affect the terms or conditions of Thompson's employment.

As to the false report of contact, negative evaluations and disciplinary write-ups do not suffice when they only constitute "notices" and do not "result in disciplinary action."  *Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 14 (2d Cir. 2019).  The EEOC decision indicates that Thompson's supervisor made a "*recommendation* that [Thompson] be suspended from weapons inspection / Police Inventory, no longer be granted overtime and that an incident of record be documented in her mid-year performance review."  EEOC Decision 1-2 (emphasis added).  However, the complaint (and the entire record here) offers no indication that any of these recommendations came to fruition.  Therefore, the report does not qualify as adverse employment action, either.

Thompson being designated "AWOL" does not constitute an adverse employment action for the same reason — the complaint includes no facts suggesting that this designation resulted in adverse consequences.  *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 520 (E.D.N.Y. 2019).

9

The failure to hire or promote, on the other hand, are classic adverse employment actions. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Similarly, a lateral transfer *can* qualify as adverse employment action, so long as it "injures" the plaintiff in some way. *Back v. Hapoalim*, No. 24-1064, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (holding that allegations are sufficient where an involuntary transfer would be perceived as a demotion); *see also Muldrow*, 601 U.S. at 359 ("The transfer must have left her worse off, but need not have left her significantly so.").

Here, Thompson argues that with her reassignment to Manhattan, she was removed from her "duties at all campus[es]." Pl. Opp'n 5. But she contradicts herself shortly thereafter: she goes on to say she performed the same duties "for the Manhattan campus only." *Id.* She does write, in her opposition brief, that the transfer to Manhattan "imposed a hardship on [her] for transportation, health / medical condition, medical care [she] received in BK." *Id.* Apart from this, the record does not reveal how the transfer "left her worse off" with respect to the terms and conditions of her employment, *Muldrow*, 601 U.S. at 359, and her complaint and briefing provide little detail on what her actual responsibilities were.

We will assume, however, that the transfer constituted adverse employment action. *Cf. id.* (imposition of "less regular" schedule and loss of take-home car, together with other setbacks, left plaintiff "worse off several times over"). Accordingly, we next consider whether Thompson has alleged facts giving rise to an inference of discrimination in connection with the failure to promote her or the transfer to Manhattan.

***Inference of Discrimination.*** On a failure-to-promote claim, "it is not enough for the plaintiff simply to allege that [s]he was qualified for a position but did not get it." *Ghosh v. N.Y.C. Hous. Auth.*, No. 21-CV-6139, 2023 WL 3612553, at *10 (S.D.N.Y. Feb. 27, 2023), *report and recommendation adopted*, 2023 WL 3746617 (S.D.N.Y. Mar. 20, 2023). Instead, she must plausibly allege "that the employer took adverse action against her at least in part for a discriminatory reason." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

Here, Thompson's complaint says virtually nothing that would permit an inference of discrimination. She refers, in the midst of a long list of conclusory fragments, to defendant Carballo having denied her "promotions, training, and pay opportunities as that of [her] white male counterparts." Compl. Supp. 5. Her opposition brief does not go meaningfully farther: there, she states that she "applied on several occasions for the Property Manager (NX) position and continued to be non-selected

11

where the job was canceled each time [she] applied, and 2 males were hired who were not more qualified than [her]." Pl. Opp'n 5; *see also id.* at 6 ("I was not given fair pay or equal pay as my white male co-workers nor the appropriate fair evaluations where I outperformed my coworkers.").

So the record is devoid of any factual content supporting the inference that Carballo was motivated by discriminatory animus. Moreover, plaintiff does not indicate when she applied for the position she was denied. Absent clarity concerning whether she applied before or after Carballo's report, the report cannot form the basis for an inference of discrimination.

In the end, plaintiff's threadbare allegations do not clear the relatively low bar set by the Second Circuit in *Vega* and *Littlejohn* (or by the Supreme Court in *Iqbal* and *Twombly*). *See Ghosh*, 2023 WL 3612553, at *10 ("While the plaintiff's initial pleading burden as to the necessary discriminatory intent is low, it is not non-existent."); *Moss v. Bd. of Educ. of Brentwood Sch. Dist.*, No. 23-CV-6571, 2025 WL 1548945, at *11 (E.D.N.Y. May 30, 2025) (dismissing discrimination claims where complaint contained "no factual allegations suggesting Defendants' selection of [someone else] for the Principal position instead of Plaintiff had any nexus whatsoever to Plaintiff's race").

12

On the lateral transfer, Thompson again pleads no facts that give rise to an inference of gender-based discrimination. Although she indicates that the transfer was involuntary, she does not allege (even in her brief) any facts that suggest it was because of her gender — just that Ingino decided to reassign her "suddenly" and that the decision was "unfair[]." Pl. Opp'n 5. Accordingly, the claim of Title VII discrimination must be dismissed.

2. Retaliation

Thompson's retaliation claim also warrants dismissal. To sustain a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

Thompson points to only one adverse action taken in retaliation for her EEOC complaint: the transfer to Manhattan. Thompson has fallen short of plausibly pleading any causal connection between the transfer and her prior EEOC complaint. To be sure, she does say that Ingino's decision to reassign her in April 2018 was "sudden"; but her original EEOC complaint was filed in 2016. Pl. Opp'n 5. The Second Circuit has stated

13

clearly that a two-year temporal gap is "too great to raise a plausible inference of" retaliation. *Dhar v. City of New York*, 655 F. App'x 864, 866 (2d Cir. 2016). Accordingly, the retaliation claim must be dismissed.

        3.    Hostile Work Environment

Thompson also fails to state a hostile work environment claim. To establish a hostile work environment, a plaintiff must show that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 604 (2d Cir. 2006). Incidents must be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001). For a single event to be sufficient, it must be "extraordinarily severe." *Banks v. Gen. Motors, LLC.*, 81 F.4th 242, 263 (2d Cir. 2023). The "mistreatment at work" must be *because of* an employee's protected characteristic. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

Thompson concedes that the "abusive verbal behavior" of her employer was not "severe or pervasive." Pl. Opp'n 2. And even putting the severity aside, she has not plausibly alleged causation: she sets forth no facts at all suggesting

14

that she experienced mistreatment *because of* a protected characteristic.  *Brown*, 257 F.3d at 252.  Therefore, her hostile work environment claim must be dismissed.

### C. The Section 1981 and FMLA Claims Are Barred

Thompson's Section 1981 and FMLA claims similarly fail.  The Section 1981 claim is barred because the defendants were acting under federal law, not state law.  *Yan Ping Xu v. City of New York*, 612 F. App'x 22, 24-25 (2d Cir. 2015) (dismissing a Section 1981 claim because the federal defendants were "not acting under color of state law").  And although the FMLA provides privately employed plaintiffs with a right of action, "[t]he FMLA does not afford such a right of action to a federal employee."  *Ross v. Dep't of the Army*, No. 22-CV-670, 2023 WL 5494644, at *3 (E.D.N.Y. Aug. 24, 2023); *Malloy v. Pompeo*, No. 18-CV-4756, 2020 WL 5603793, at *9 (S.D.N.Y. Sep. 18, 2020); *Beauchat v. Mineta*, No. 03-CV-3196, 2006 WL 2711608, at *9 (E.D.N.Y. Sep. 21, 2006).  Accordingly, these claims must be dismissed.

### D. Equal Pay Act Claim

Thompson also fails to state a claim under the Equal Pay Act.  A plaintiff establishes a *prima facie* case of equal pay discrimination by alleging that "(1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work in jobs requiring equal skill,

effort, and responsibility; and (3) the jobs are performed under similar working conditions." *Rizzo v. Kraus Org.*, No. 10-CV-272, 2010 WL 2427434, at *2 (E.D.N.Y. May 25, 2010) (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995)). The EPA typically has a two-year statute of limitations. 29 U.S.C. § 255(a).

Thompson identifies the comparative coworkers by their pay grade: "GS9, 11, [and] 12." Pl. Opp'n 5. She alleges that she "perform[ed] the duties of an Inventory Manager NX (GS-9 and GS-11) for over ten (10) years," despite having the title of "Program Support Assistant working in the GS-8 level." *Id.* at 2. She does not say what these duties were. This is insufficient. *See Faughnan v. Nassau Health Care Corp.*, No. 19-CV-3171, 2021 WL 1566138, at *8 (E.D.N.Y. Mar. 18, 2021) (dismissing Equal Pay Act claim in support of which "plaintiff merely allege[d] the titles and salaries of" comparators and that they "did the same work, without an explanation of what that work entails"); *United Probation Offs. Ass'n v. City of New York*, No. 21-CV-218, 2022 WL 875864, at *8 (S.D.N.Y. Mar. 24, 2022) (granting motion to dismiss against plaintiffs who failed to "provide a sufficient description of the responsibilities, requirements, or working conditions of" one class of workers

16

"that would allow the Court to plausibly infer that they perform equal work to" the other).[5]

It is true that the bar is not high on this claim, either, at the pleading stage: the Second Circuit has yet to require plaintiffs to identify a specific comparator, for example, *Lavin-McEleny v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001); and all that is required in the comparison of job duties is that they are "substantially equal." *Id.* at 480-81. But as with the pleading bar for discrimination in the failure to promote, *see Ghosh*, 2023 WL 3612553, at *10, the bar is not non-existent. For these reasons, Thompson's Equal Pay Act claim is dismissed.

## IV. Conclusion

For the reasons set forth above, plaintiff's federal claims are dismissed without prejudice. Having dismissed the federal claims, we will decline to exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367(c)(2); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31-32 (2025) (stating that when "the district court has

---

[5] *Cf. Chiaramonte v. Animal Med. Ctr.*, No. 13-CV-5117, 2014 WL 3611098, at *5 (S.D.N.Y. July 22, 2014) (denying motion to dismiss where plaintiff "alleged that she and [another employee] both performed similar work as veterinarians practicing internal medicine; that, in addition to those duties, she shouldered responsibilities that [the comparator] did not match; and that, if anything, she worked under more demanding conditions than [the comparator]"); *Crawley v. Macy's Retail Holdings, Inc.*, No. 15-CV-2228, 2016 WL 6993777, at *8-9 (S.D.N.Y. Nov. 29, 2016) (denying motion to dismiss where the plaintiff's comparator was in an "identical" role, and therefore satisfied "equal responsibilities" and "similar working conditions").

17

dismissed all claims over which it has original jurisdiction," it "need not exercise" supplemental jurisdiction).

Still, given her *pro se* status, Thompson will be granted thirty days from the date of this order to amend the complaint (notwithstanding that she previously declined invitations to amend). Any amended complaint will completely replace, not supplement, the prior complaint. Therefore, the amended complaint must include all claims and factual allegations against all defendants, must be captioned an "Amended Complaint," and should bear the same docket number as this Memorandum and Order. If Thompson fails to file an amended complaint within the time allowed or cure the deficiencies identified in this order, the case will be dismissed with prejudice, and judgment shall enter. The Clerk of Court is respectfully directed to mail a copy of this order to Plaintiff and to note the mailing on the docket.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated: October 21, 2025
Brooklyn, New York

18